MAX N. TOBIAS, JR., Judge.
| ] This matter arises from an automobile accident on 17 May 2011 between the plaintiff/appellee, Mattie M. White, and the defendant, Roy Owens. The accident was caused by Mr. Owens and Ms. White was injured. The issue presented on appeal is whether a valid settlement was entered between Ms. White and defendants/appellants, Thrifty Car Rentals (“Thrifty”) and York Risk Services Group, Inc. (“York”). After reviewing the record and applicable law, we affirm the judgment of the trial court finding that a valid settlement exists.
At the scene of the accident, Mr. Owens told Ms. White that he had rented the vehicle that he was driving from Thrifty and purchased a policy of liability insurance through York that provided coverage for her injuries.[1] After securing counsel, *1220 Ms. White contacted York with her information and provided medical records showing treatment related to the accident.
| ¡¿During settlement negotiations of her personal injury claim with Thrifty and York, Ms. White requested a waiver from Medicare of payments made for visits to the physician to treat her injuries related to the accident. She was told that it could take 65-75 days to receive the waiver. Since the delivery date of the waiver letter was outside Ms. Wdiite’s control and the prescription period was approaching, suit was filed on 15 May 2012, in First City Court of the City of New Orleans, naming Mr. Owens, Thrifty, York and Farmers Insurance (Ms. White’s underinsured motorist insurance carrier (“UM”)), as defendants in order to preserve her claims. Counsel for Ms. White told Thrifty and York that, because they were in settlement negotiations, neither need answer the petition.
On 22 August 2012, York’s representative, Patricia Miller, provided proof of DTG’s self-insurance status and offered to settle Ms. White’s claim for $15,000.00. A receipt and release covering the accident in question was also enclosed. The letter stated in pertinent parts:
The rental contract signed by Owens, Roy contained a shifting clause, which shifts the primary liability coverage from the lessor to the lessee ... Therefore, York Risk Services Group, Inc. Florida is adjusting this claim on a primary basis ... Attached is a release of all claims for our client’s $15,000 bodily injury limit. Please have the release signed and notarized. We will also need the letter from Medicare and your clients Social Security # prior to issuing any payments.
[Emphasis supplied.]
On 25 August 2012, the transmitted release was executed, notarized, and returned to York.
laDespite assurances to the contrary, Thrifty and York answered the suit and served discovery on Ms. AVhite. Ms. White informed Thrifty and York that there was a settlement between them and she was waiting for the Medicare waiver letter. Thrifty and York then filed a motion for summary judgment, arguing that supplemental liability coverage was rejected by Mr. Owens and that Ms. Wdiite’s UM coverage applied. Nothing changed after they were informed again that the case had been settled.
The case was removed to Civil District Court for the Parish of Orleans; the amount of damages in dispute was now above the jurisdictional limits of First City Court. Ms. White filed a motion to enforce the settlement, arguing that her claim was settled for $15,000.00. In support, Ms. Wdiite attached a copy of the executed and notarized receipt and release, as well as an affidavit from the attorney representing her at the time of the settlement that the she mailed personally the notarized document to York on 25 August 2012. Thrifty and York reasserted their motion for summary judgment.
Both motions were presented to the trial court on 23 January 2013. The court heard the motion to enforce first, reasoning that if it found the existence of a settlement, the motion for summary judgment would be moot. After listening to the parties’ arguments, the trial court held that a settlement existed as of 25 August 2012. On 25 February 2014, a final judgment granting the motion to enforce was entered in favor of Ms. Wdiite and against Thrifty and York in the amount of $15,000.00. This timely suspensive appeal followed.
*1221 1 /Thrifty and York argue that the trial court erred by finding that a settlement had occurred. They also contend that the motion for summary judgment should have been granted because clearly Mr. Owens rejected the offer of supplemental liability insurance and coverage under the law applies only when no other collectible insurance exists, namely Ms. White’s UM coverage.
We start with the settlement. Pursuant to La. C.C. art. 3071, “a compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” “A contract is formed by the consent of the parties established through offer and acceptance.” La. C.C. art. 1927. Here, the letter of 22 August 2012 contained a clear and unequivocal offer of settlement; Ms. White’s execution of the receipt and release was the acceptance. Thus, a contract was established.
Thrifty and York contend that the receipt of the Medicare letter and Ms. White’s social security number were conditions of the settlement, and because they were never received, the settlement was not consummated. We disagree. These two items were conditions of payment, not settlement.[2] We find that the parties settled the matter on 25 August 2012, when Ms. White signed and had notarized the receipt and release sent by Ms. Miller on behalf of York.
The question, then, is whether the settlement was invalidated by the fact that Ms. White had UM coverage. We find that it was not.
|fiLa. R.S. 22:1296 addresses the application of insurance for rental cars. In part B(2) it states:
Notwithstanding a rental company’s obligation to provide minimum financial responsibility pursuant to the Motor Vehicle Safety Responsibility Law as the owner of the vehicle for the privilege of registering and titling such vehicle, a rental company shall be relieved of any security obligation under the Motor Vehicle Safety Responsibility Law when the renter or driver has valid and collectible insurance, self-insurance, bond, deposit, or other form of security in an amount sufficient to satisfy the minimum financial responsibility requirements of the Motor Vehicle Safety Responsibility Law, when the claimant maintains uninsured or underinsured motorist coverage for bodily injury or property damage cláims, or when the renter violates the terms or conditions of the rental agreement.
Suit was filed in First City Court on 15 May 2012. DTG had already assumed liability for the accident as evidenced by the 2011 check from DTG paying for the repairs to Ms. White’s damaged vehicle. Further, the parties were negotiating to settle Ms. White’s bodily injury claim. Neither DTG nor York asked Ms. White if she had her own liability insurance and UM coverage. No evidence exists that Ms. White willfully withheld this information from the appellants; she simply was not asked.[3]
Thrifty and York also maintain that if there was a settlement, which they deny, the contract was based on a mistaken belief that Ms. White had no other applicable insurance. However, “error vitiates consent only when it concerns a cause without *1222 which the obligation would not have been incurred and that cause was known or should have been known to the other party.” La. C.C. art. 1949; Scott v. Bank of Coushatta, 512 So.2d 356, 361 (La.1987) (“Unilateral error does not vitiate consent if the reason for the error was the complaining party’s inexcusable neglect in discovery of the error.”). We conclude that the existence of UM coverage was easily known had one question been asked when negotiating the settlement. Therefore, we find that a valid settlement was entered into by the parties.
In their last assignment of error, Thrifty and York assert that the driver of the rental vehicle, Mr. Owens, waived the “supplemental liability insurance,” thus, no coverage for Ms. White’s injuries existed. We find that, by paying her property damage claim and settling the personal injury claim, this argument was waived by the insurance company and cannot now be argued to this court.
Based on the foregoing, we affirm the judgment of the trial court enforcing the settlement of $15,000.00 between the parties.
AFFIRMED.

. The actual company that sold the insurance is DTG Operations, Inc., a Louisiana-approved self-insurer at the time of the accident. The claim, however, was administered by York. The record contains a check dated 27 June 2001, from DTG to Ms. White in the *1220 amount of $2,065.76, to pay for repairs to her vehicle.

. Thrifty and York also contend that the offer was clearly withdrawn when they filed their motion for summary judgment on 7 June 2013. This, however, occurred after the settlement was final.

. While not contained in the record, a police report usually lists the name of the automobile liability insurance possessed by all parties involved in an accident.